# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LUCY IANNIELLO | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-17-1820 |
| SAN ROCCO, INC. d/b/a THE WELLINGTON HOTEL | * |
| Defendant. | * |

## MEMORANDUM OPINION

Plaintiff Lucy Ianniello filed this negligence action against San Rocco, Inc. d/b/a/ The Wellington Hotel ("San Rocco"). ECF 1. Pending before this Court is San Rocco's Motion for Summary Judgment. ECF 35. The issues have been fully briefed, ECF 35, 38, 41, and no hearing is necessary, *see* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, San Rocco's Motion will be denied.

## I.  FACTUAL BACKGROUND

The facts below are taken in the light most favorable to Ianniello, the non-moving party. In July of 2014, Ianniello was vacationing in Ocean City, Maryland and staying at The Wellington Hotel. ECF 10 ¶ 6. Ianniello was staying on the second floor of the hotel, and the only way to access her room was an outdoor wood staircase that had a handrail on one side. ECF 38-1 at 4-5. She had been at the hotel for at least one day prior to July 16, 2014. Ianniello Dep. 19:9-17; ECF 35-4 at 3.

On or about the morning of July 16, 2014, Ianniello exited the hotel room to get a cup of coffee "a few minutes walk away from the hotel," and then returned to her hotel room. Ianniello Dep. 26:5–27:9. At some point in her trip out to get coffee, Ianniello saw the hotel manager and

San Rocco's corporate designee, Sal D'Ascoli, who told her to be careful,[1] which Ianniello took to mean, "Be careful coming down the step[s]." Ianniello Dep. 33:6–33:18; *see also* D'Ascoli Dep. 5:1-15. After her return, Ianniello left her room once more with her coffee and an umbrella, and she slipped while coming down the last few stairs. Ianniello Dep. 27:3–27:8. It had been raining when Ianniello went to get coffee, but the rain became much heavier by the time she left her room the second time. *Id.* 29:12–29:20. Ianniello suffered bodily injuries from her fall, including a fractured ankle. ECF 10 ¶ 7. Ianniello, through this action, seeks compensatory damages from San Rocco, alleging negligence. ECF 10.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). San Rocco, as the moving party, bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad,* 823 F. Supp. 2d 334, 348 (D. Md. 2011). If San Rocco establishes that there is no evidence to support Ianniello's case, the burden then shifts to Ianniello to proffer specific facts to show a genuine issue exists for trial. *Id.* Ianniello must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of Ianniello's position is insufficient; rather, there must be evidence on which the jury could reasonably find for Ianniello. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349. Additionally, summary

---

[1] Ianniello's deposition does not make clear whether she saw D'Ascoli on her way out of the hotel or back in.

judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. Ianniello "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). If Ianniello fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Casey*, 823 F. Supp. 2d at 348-49. In ruling on a motion for summary judgment, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## III. ANALYSIS

Since the alleged tort and resulting injury occurred in Maryland, Maryland substantive law determines Plaintiff's burden of proof and what constitutes a "material fact." *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Branhaven, LLC v. BeefTek, Inc.*, 965 F. Supp. 2d 650, 664 (D. Md. 2013) ("When a claim is based on state law, the choice of law rules are those of the state in which the district court sits."); *Lab. Corp. of America v. Hood*, 911 A.2d 841, 845 (Md. 2006) (holding that, in a tort action, Maryland applies the law of the state where the injury occurred). Under well-established Maryland negligence jurisprudence, a properly pleaded claim of negligence includes four elements. Plaintiff must show: (1) that Defendant was under a duty to protect Plaintiff from injury; (2) that Defendant breached that duty; (3) that Defendant's breach of the duty proximately caused the loss or injury suffered by Plaintiff; and (4) that Plaintiff suffered actual loss or injury. *See Troxel v. Iguana Cantina*, 201 Md. App. 476, 495 (2011). In premises liability cases, the duty of care owed by a landowner is determined by the legal classification of the entrant. *See Deboy v. City of Crisfield*, 167 Md.

App. 548, 555 (2006). That is, the duty of care varies according to whether the visitor is an invitee, licensee, or trespasser. *Id*.

The business invitee is owed the highest duty of care. *See Deboy*, 167 Md. App. at 555. A landowner must "exercise reasonable care to protect the invitee from injury caused by an unreasonable risk that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 561 (2014). More specifically, the duties of a landowner to a business invitee include "the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Id*. A business invitee can reasonably assume that a landowner will exercise reasonable care to "ascertain the condition of the premises, and if [the landowner] discovers any unsafe condition [he or she] will either take such action as will correct the condition and make it reasonably safe or give a warning of the unsafe condition." *Rawls v. Hochschild, Kohn & Co*., 207 Md. 113, 117-18 (1955).

Despite the heightened duty owed to the business invitee, a landowner is not required to be an insurer of the invitee's safety. *Id.* at 118. The invitee has a duty to observe his or her surroundings and "exercise due care for his or her own safety." *Rybas*, 21 F. Supp. 3d at 562. As a result, a landowner has no duty to warn against open, obvious, and present dangers. *Id*. Nor does a presumption of negligence arise solely because an invitee was injured on a landowner's premises. *See Rawls*, 207 Md. at 118.

To prove that a landowner breached his duty, the business invitee must show "not only that a dangerous condition existed, but also that the proprietor 'had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the owner the

opportunity to remove it or to warn the invitee.'" *Rehn v. Westfield America*, 153 Md. App. 586, 593, 837 A.2d 981, 984 (2003) (quoting *Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 35 Md. App. 250, 256, 370 A.2d 124, 128 (1977)). The invitee must proffer evidence indicating the landowner,

> could have discovered the condition by the exercise of ordinary care [because] the dangerous condition existed for a length of time sufficient to permit a person under a duty to discover it if [he or she] exercised ordinary care [and the] failure to discover it may in itself be evidence of negligence sufficient to charge [the landowner] with knowledge of it.

*Rawls*, 207 Md. at 120. The facts and circumstances of each individual case shall determine whether the length of time taken to remedy or warn of a dangerous condition confers liability upon a landowner. *Id.* at 122. Evidence indicating the "nature of the condition, its foreseeable consequences, the means and opportunities of discovering it, the diligence required to discover and correct it, and the foresight which a person of ordinary prudence would have exercised under similar circumstances" should all be considered. *Id.* In a motion for summary judgment, "where it might reasonably be decided that the [landowner] could have discovered the dangerous condition by the exercise of reasonable care, the case should be submitted to the jury." *Id*. However, where no inference "can be reasonably drawn that the [landowner] could have discovered the condition by the exercise of reasonable care, the court should decide the case as a matter of law." *Id.*

Moreover, "a plaintiff may recover only those damages that are affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the tortious misconduct." *Jones v. Malinowski*, 299 Md. 257, 269, 473 A.2d 429, 435 (1984). Importantly, the proximate cause of an injury need not be the sole cause; rather, the plaintiff need only establish a "reasonable connection" between the defendant's negligence and the plaintiff's

injury. *Young v. United States*, 667 F. Supp. 2d 554, 561 (D. Md 2009). In order to establish a "reasonable connection," the plaintiff must show that the defendant's negligent conduct was both: (1) a cause in fact, and (2) a legally cognizable cause of the plaintiff's injury. *See id.*; *Wankel v. A & B Contractors, Inc.*, 127 Md. App. 128, 159-60, 732 A.2d 333, 349 (1999).

Here, both parties agree that Plaintiff's legal classification is that of an invitee, or a business invitee, and therefore agree on the duty San Rocco owed to Ianniello. ECF 10 ¶ 6, 35-1 at 6, 38-1 at 4. Further, San Rocco does not argue that Ianniello has failed to produce evidence that she suffered an injury. Accordingly, the elements of the negligence claim that are in dispute are whether San Rocco breached its duty, and if it did, whether that breach proximately caused Ianniello's injury.

### A. Breach

San Rocco argues that it did not breach its duty to Ianniello because: (1) there was no dangerous or defective condition; (2) even if there was a dangerous or defective condition, San Rocco did not have any requisite knowledge of the condition; and (3) if a dangerous or defective condition existed, Ianniello would have been on notice of the condition, and San Rocco would not be liable for such a known or obvious danger.[2] ECF 35-1 at 6-7.

#### 1. Dangerous or Defective Condition

San Rocco maintains that the wooden stairs upon which Ianniello fell were not in a dangerous or defective condition. *Id.* Ianniello contends that the stairs were defective because they lacked rubber treads and only had one handrail. ECF 38-1 at 4-5. Both parties have retained experts, who offer different opinions as to whether the wooden stairs were dangerous.

---

[2] San Rocco's third argument touches on the question of whether Ianniello was contributorily negligent, an issue addressed later in this opinion.

San Rocco's expert, Lawrence C. Dinoff, performed a "slip-test" on the subject stairs, which involved testing the slip resistance of the stairs under both dry and wet conditions, recognizing a slip resistance of at least 0.5 as the "reasonable threshold for slip resistance to prevent pedestrian slips on level walkway surfaces." ECF 35-6 at 7. Dinoff concluded that the "average slip resistance of the subject wood stair treads was 0.90 when dry and 0.70 when wet with water," exceeding the 0.50 threshold for safe level walkways. *Id.* at 8. He also concluded that the hotel's use of single handrails is "reasonably evaluated with regard to the applicable standards for existing buildings and stairs." *Id.* at 9. Dinoff did not indicate when the stairs were built, but noted that the hotel dates back to the 1940's. *Id.* at 4, 9. Accordingly, he found that, because the subject stair was only 42 inches wide, its single handrail complied with codes in effect during the life of the building, such as the 1984 Building Officials Code Administrators ("BOCA") Code, Section 816.5, which permitted stairways having a width less than 44 inches to have only one handrail. *Id.* at 9.

Ianniello's expert, Dr. Gregory Harrison, did not perform the same "slip-test" as Dinoff on the subject stairs, instead evaluating the wood treads "based on [his] education, walkway safety training, and decades of work experience." ECF 38-6 ¶ 5. He noted, "[t]he standard of care for evaluating the safety of a walkway surface does not require that slip resistance be determined by the use of a portable C[oefficient] O[f] F[riction] test device or commercial portable slip meter or Tribotemer," which Dinoff used. *Id.* ¶ 10. He concluded that "Dinoff's average dry value of 0.90 of the Wellington's wood stair treads is ridiculous and exceeds the well-known laboratory established dry static COF of 0.70 of a new brushed concrete sidewalk, which is far rougher than a plain wood plank," and that a "wet, worn wood step tread is well known to be a [sic] slippery and should be equipped with a rubber tread covering especially for

7

the exterior subject to rain and where the public would often be wearing flip-flops." *Id.* ¶ 11. Harrison also opined that the subject stairs required two handrails pursuant to the Code of Ocean City, Maryland, Life Safety Code Subsection 7.2.2.4.2*, which provides, "[s]tairs and ramps shall have handrails on both sides." *Id.* ¶ 19; ECF 38-7 at 5.

In sum, because the parties' experts differ on both the standards used to evaluate the condition of the subject stairs, as San Rocco itself concedes, and the overall danger of the stairs, genuine disputes of material fact remain as to whether the stairs were in a dangerous or defective condition when Ianniello fell.

### 2. Knowledge

San Rocco argues that, even if there was a dangerous or defective condition, it did not have the requisite knowledge of the condition. To defeat San Rocco's Motion, Ianniello must proffer competent evidence that San Rocco had actual or constructive knowledge of the dangerous condition that allegedly caused her fall. *Rawls*, 207 Md. at 119. Plaintiff relies on her own deposition and the deposition of Mr. D'Ascoli, who witnessed her fall, to establish San Rocco's knowledge of the dangerous conditions. Plaintiff testified that Mr. D'Ascoli saw her before she fell and said, "be careful" and that she took that to mean "[b]e careful coming down the step." Ianniello Dep. 33:6-18. In her Answer to San Rocco's Interrogatory Number 22, Ianniello stated that Mr. D'Ascoli "told Ms. Ianniello to be careful the first time she came down the stairs on July 16, 2014 as she was going out to get a cup of coffee," and that "it was drizzling at the time Mr. D'Ascoli made the statement." ECF 35-4 at 3. In his deposition, Mr. D'Ascoli stated that he first saw Ianniello that morning with two cups of coffee in her hand. D'Ascoli Dep. 37:1-4. He testified, "I saw her coming down. I said, 'Be careful coming down. It's

8

rainy.' She comes down the first set of stairs from the second floor, comes around. That's going to -- coming down to the next set of stairs to the landing. Then I see her fall." *Id.* 37:6-10.

Whether Mr. D'Ascoli told Ianniello to "be careful" when she first went down the stairs to get coffee or when she was about to walk down the stairs a second time does not change the undisputed fact that Mr. D'Ascoli told Ianniello to be careful before she fell. To be sure, this warning cuts both ways. For Ianniello, it could serve as a basis to find that San Rocco, through Mr. D'Ascoli, had actual notice of the dangerous condition of the stairs. For San Rocco's part, the warning could equally serve to establish that Ianniello had been warned of the dangerous condition of the stairs, but nonetheless assumed the risk of injury by continuing her descent with multiple items in her hands. In any event, examining Ianniello's evidence as a whole and in the light most favorable to her, she has offered sufficient evidence for a reasonable jury to find that San Rocco had knowledge of the dangerous condition that allegedly contributed to Ianniello's fall.

### B. Contributory Negligence and Assumption of Risk

Finally, San Rocco argues that it is entitled to summary judgment because Ianniello was contributorily negligent and assumed the risk of her fall. In Maryland, contributory negligence and assumption of the risk both act as a total bar to a plaintiff's recovery. *Parks v. Miles & Stockbridge, P.C.*, No. 2123 SEPT.TERM 2014, 2016 WL 6664926, at *23 (Md. Ct. Spec. App. Nov. 10, 2016) ("Contributory negligence bars a plaintiff's recovery in Maryland") (citing *Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149 (Md. 2013)); *ADM P'ship v. Martin*, 702 A.2d 730, 734 (Md. 1997) (Assumption of the risk, "if established, [] functions as a complete bar to recovery . . . .") (internal quotation marks and citation omitted). Contributory negligence is "the failure to observe ordinary care for one's own safety." *Union Memorial Hosp. v. Dorsey,*

125 Md. App. 275, 282 (1999) (quoting *Menish v. Polinger*, 277 Md. 553, 559 (1976)). "It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Id*. It is the defendant's burden to prove that the plaintiff was contributorily negligent. *Id*. If the defendant meets this burden, the plaintiff is barred from recovery. *Id*. Maryland courts have stated time and time again that "ordinarily the question of whether the plaintiff has been contributorily negligent is for the jury, not the judge to decide." *Id*.; *Campbell v. Baltimore Gas & Elec. Co.*, 95 Md. App. 86, 93 (1993). "Only when the minds of reasonable persons cannot differ is the court justified in deciding the question of plaintiff's contributory negligence as a matter of law." *Union Memorial,* 125 Md. App. at 282. Similarly, for assumption of risk, the issue is for the court "when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger." *Schroyer v. McNeal*, 323 Md. 275, 283-84, 592 A.2d 1119, 1123 (1991).

San Rocco argues that Ianniello was contributorily negligent because "she knew it was raining, but held a cup of coffee in one hand and an umbrella in the other, rather than utilize the railing," and because Ianniello was wearing rubber flip-flops "which are universally known to be slippery when wet." ECF 35-1 at 8. Being mindful of the requirement that all facts and inferences be viewed in a light most favorable to the non-moving party, this Court cannot find contributory negligence as a matter of law. Ianniello stated at her deposition that she has worn flip-flops in wet conditions before, and has not fallen. Ianniello Dep. 29:21-30:8. Further, because Maryland courts have repeatedly insisted that contributory negligence is typically a question for the jury, this Court will not decide on summary judgment that Ianniello's decision to hold an umbrella and her coffee in her hands, rendering her unable to hold on to the railing, was

10

"something that a person of ordinary prudence would not do . . . under the circumstances." *Union Memorial*, 125 Md. App. at 559.

As for San Rocco's assumption of risk defense, disputed facts persist. For instance, whether the stairs were, in fact, dangerous without rubber treads and handrails on both sides is contested by the parties' experts. Moreover, the record is inconclusive as to whether Mr. D'Ascoli's warning to "be careful" created a situation in which Ianniello was assuming the risk of her fall when she continued to descend. This Court cannot conclusively answer these questions as a matter of law, and Ianniello is entitled to have a jury weigh testimony on these matters. *See Schroyer*, 323 Md. at 283, 592 A.2d 1119 ("The test of whether the plaintiff knows of, and appreciates, the risk involved in a particular situation is an objective one and ordinarily is a question to be resolved by the jury.").

San Rocco is correct that Ianniello will face obstacles at trial. The posture of this case is similar to that considered by the Fourth Circuit in *Meyers v. Lamer*, where, in remanding for trial, the Court noted that plaintiff "faces a difficult and daunting task of convincing a jury that [s]he was not contributorily negligent-not even one iota. That said, it is not our duty to weigh whether the actions taken by [plaintiff] amount to negligent conduct." 743 F.3d 908, 918 (citing *Balt. Transit Co. v. State ex rel. Castranda*, 194 Md. 421, 71 A.2d 442, 447 (1950) ("In order that a case may be withdrawn from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds.") As noted above, there is room for difference here, and granting summary judgment to San Rocco would be improper.

## **CONCLUSION**

For the reasons set forth above, San Rocco's Motion for Summary Judgment, [ECF 35], will be DENIED. A separate Order follows.

Dated: April 1, 2019

/s/
Stephanie A. Gallagher
United States Magistrate Judge